**Judith A. MANNHARD, Plaintiff-Appellant,**

v.

**CLEAR CREEK SKIING CORPORATION, Defendant-Appellee.**

No. 81CA0734.

Colorado Court of Appeals, Div. II.

Nov. 10, 1983.

Rehearing Denied Dec. 8, 1983.

Certiorari Denied May 29, 1984.

Montgomery, Little, Young, Campbell & McGrew, P.C., J. Bayard Young, Englewood, Casey & Klene, P.C., Donald A. Klene, Denver, for plaintiff-appellant.

White & Steele, P.C., Stephen K. Gerdes, Denver, for defendant-appellee.

VAN CISE, Judge.

In February 1979, Gregory W. Mannhard (the skier) was killed as a result of a snow avalanche triggered by him and two companions skiing in an out-of-bounds area at Loveland Basin Ski Area. The area was leased, controlled, and maintained by defendant, Clear Creek Skiing Corporation (the operator). Claiming that the skier's injuries and his subsequent death were caused by the negligence of the operator, the skier's wife, plaintiff, Judith A. Mannhard, brought this wrongful death action on behalf of herself and their two minor children. The operator denied liability and claimed that the accident had been caused by the negligence of the skier. It was undisputed that any negligence of his would be imputed to the plaintiff.

After a jury trial, a special verdict was returned finding both the skier and the operator to have been 50% negligent. Accordingly, judgment was entered dismissing plaintiff's claim. She appeals. We affirm.

I.

Plaintiff contends the court erred (1) in refusing to give her tendered jury instruction which would have informed the jury that the operator owed the highest degree of care because it was engaged in an "inherently dangerous activity," and (2) by giving, instead, an instruction advising the jury that the operator's duty was "reasonable care." We conclude that the rulings on the instructions were proper.

In arguing for a higher standard of care, plaintiff does not claim that the operator's activities were "highly dangerous" or "ultrahazardous"—such as blasting or impounding of water—for which there is strict liability. *See, e.g., Garden of the Gods Village, Inc. v. Hellman,* 133 Colo. 286, 294 P.2d 597 (1956), and *Garnet Ditch & Reservoir Co. v. Sampson,* 48 Colo. 285, 110 P. 79 (1910). Instead, she asserts that the measures that were taken to protect skiers from avalanches, such as furnishing trail maps warning of the danger, posting warning signs, installing fence or rope barriers, and patrolling, inspecting, and maintaining the signs and barriers to be sure that they are in a good state of repair and visibility, if not carried out carefully, may lead skiers in the area to expose themselves to grave danger. We agree. However, the duty of the operator in this regard is one of "reasonable care". No higher standard is required. *See Kulik v. Public Service Co.,* 43 Colo.App. 139, 605 P.2d 475 (1979), *aff'd sub nom., Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1980). *See also* Ski Safety Act of 1979, § 33–44–101, et seq., C.R.S. 1973 (1982 Cum.Supp.).

In *Federal Insurance Co. v. Public Service Co.,* 194 Colo. 107, 570 P.2d 239 (1977),

a case involving transmission of electricity, the court held that a higher degree of care standard is required only when: (1) the activity is inherently dangerous; (2) the defendant possesses expertise in dealing with the activity; and (3) the general public would not be able to recognize or guard against the potential danger. At least the first and third criteria are missing here.

■ As to the first criterion, the phrase "inherently dangerous activity" implies some sort of action or affirmative act which would *create* a dangerous situation for others, such as transmission of electricity, as in *Federal Insurance Co. v. Public Service Co., supra,* or delivery of liquified propane gas, as in *Van Hoose v. Blue-flame Gas, Inc.,* 642 P.2d 36 (Colo.1981). In other words, the phrase applies to activities which by their very nature create a danger to the public that otherwise would not exist. The snow conditions which constituted the avalanche danger were a natural occurrence and were not caused by, nor did they result from, operator's activities. And, there was no evidence that the danger was increased by anything done or not done by the operator.

We have not been referred to, and we have not found, any Colorado case law in which the "inherently dangerous" classification has been applied to passive activities or inaction pertaining to already existing dangerous natural conditions. We see no need so to extend the concept. Therefore, we hold that, with the exception of the ski tows themselves, which are not involved here, there was no activity engaged in by the operator, and it brought nothing on the land, that was inherently dangerous to the public.

As to the third criterion, the testimony, including that of the skier's companions, indicated that avalanche danger is a phenomenon of which the public is generally aware, and that conditions under which avalanches are likely to occur are easily recognized by most skiers so they can be avoided. These factors were fully known and appreciated by the skier himself.

*Summit County Development Corp. v. Bagnoli,* 166 Colo. 27, 441 P.2d 658 (1968), relied on by plaintiff, is inapposite. In *Bagnoli,* the court required a higher degree of care in operating a ski tow, because the lift operator was essentially in the position of a common carrier. And, a skier has little or no control over his own movements while riding a chairlift or gondola and must necessarily depend on the operator for his safe passage. Conversely, while on the slopes, as here, the skier has complete freedom of movement and choice.

Under the circumstances of this case, the court was correct in giving the standard reasonable care instruction, CJI-Civ.2d 12:4 (1980), and in refusing to impose a higher standard.

## II.

■ Plaintiff also contends that the jury's finding that her damages were $100,000 was so disproportionate to the evidence that it indicated passion, prejudice, and mistake, and requires the court to grant a new trial on all issues. We do not agree.

A finding of $100,000 in damages, on conflicting evidence as to plaintiff's net pecuniary loss, is not "grossly and manifestly inadequate" nor an amount "so small as to clearly and definitely indicate that the jury ... [was] influenced either by prejudice, passion or other improper considerations." *Lehrer v. Lorenzen,* 124 Colo. 17, 233 P.2d 382 (1951).

Judgment affirmed.

SMITH and KELLY, JJ., concur.