**Bhrett PIZZA, Plaintiff-Appellant,**

v.

**WOLF CREEK SKI DEVELOPMENT CORPORATION, a Colorado corporation, Defendant-Appellee.**

**No. 83SA62.**

Supreme Court of Colorado,
En Banc.

Dec. 2, 1985.

Rehearing Denied Jan. 21, 1986.

---

Williams, Trine, Greenstein & Griffith, P.C., William A. Trine, Boulder, Lee J. Shapiro, Littleton, for plaintiff-appellant.

White & Steele, Stephen K. Gerdes, John M. Lebsack, Denver, for defendant-appellee.

ROVIRA, Justice.

The plaintiff-appellant, Bhrett Pizza, appeals a judgment of the district court based on a jury verdict finding the defendant, Wolf Creek Ski Development Corporation (Wolf Creek), not negligent. He challenges the judgment on two grounds: that the Ski Safety Act of 1979, section 33–44–109(2), 14 C.R.S. (1984), is unconstitutional;[1] and that the trial court erred in giving certain jury instructions and not giving others. We uphold the constitutionality of the challenged statute but agree that certain of the instructions given were erroneous. Accordingly, we reverse the judgment and remand for a new trial.

## I.

On December 5, 1980, Pizza suffered severe injuries while skiing down "Thumper," a slope marked "more difficult" at Wolf Creek ski area. The injury occurred on his first run of the day. At trial, Pizza testified that while skiing down Thumper he unexpectedly became airborne due to a variation in terrain. After traveling through the air for an unknown distance, he landed in such a manner as to severely damage his spine.

A key issue at trial centered on the condition and nature of Thumper at the point where the accident occurred. The terrain of Thumper consists of a series of plateaus and drop-offs which extend from the top of the run to the bottom. The accident occurred near the "lower headwall" on Thumper. The lower headwall consists of a drop-off to a snow-covered service road which traverses the lower portion of the run. The downhill edge of the service road is followed by another drop-off. The road is used during the summer for logging purposes and to reach the ski lifts and runs for maintenance.

Shortly after the accident, Pizza's eyeglasses and ski poles were found approximately 20 to 25 feet from the downhill side of the service road; and he was found lying approximately 60 to 75 feet below the service road. No one witnessed the accident.

Pizza brought an action against Wolf Creek, the operator of the area, alleging negligent failure to warn of Thumper's dangerous condition, and negligent failure to eliminate the condition. The jury returned a verdict for the defendant.

## II.

The appellant contends that the evidentiary presumption contained in section 33–44–109(2), 14 C.R.S. (1984), is unconstitutional as violative of the fourteenth amendment of the United States Constitution.[2] That section states:

---

1. This appeal was filed directly with this court pursuant to section 13–4–102(1)(b), 6 C.R.S. (1973) (constitutionality of a statute in question).

2. The fourteenth amendment provides in pertinent part: "No state shall ... deprive any person of life, liberty or property without due process of law, nor deny to any person within its

(2) Each skier has the duty to maintain control of his speed and course at all times when skiing and to maintain a proper lookout so as to be able to avoid other skiers and objects. However, the primary duty shall be on the person skiing downhill to avoid collision with any person or objects below him. It is presumed, unless shown to the contrary by a preponderance of the evidence, that the responsibility for collisions by skiers with any person, natural object, or man-made structure marked in accordance with section 33–44–107(7) is solely that of the skier or skiers involved and not that of the ski area operator.

He challenges the constitutionality of the presumption on the grounds that it is vague, not founded on a rational evidentiary basis, and violates his right to equal protection under the law. In addressing these contentions we are mindful of the well-settled principle that statutes are presumed to be constitutional, and the challenger bears the burden of proving unconstitutionality beyond a reasonable doubt. Section 2–4–201, 1B C.R.S. (1980); *High Gear and Toke Shop v. Beacom*, 689 P.2d 624, 630 (Colo.1984); *People v. Smith*, 620 P.2d 232 (Colo.1980).

## A. *Vagueness*

The appellant argues that the word "responsibility," and the phrases "natural object" and "unless shown to the contrary by a preponderance of the evidence" are unconstitutionally vague under the due process clause of the fourteenth amendment. We disagree.

This court has always endeavored to construe statutory language in such a manner as to avoid finding it unconstitutional on the basis of vagueness whenever reasonable and practicable. *Mr. Lucky's, Inc. v. Dolan*, 197 Colo. 195, 199, 591 P.2d 1021, 1023 (1979). Because we have not adopted a standard concerning the requisite degree of certainty for determining the constitutionality of a purely civil statute,[3] we derive guidance from standards applied in the criminal context. In *High Gear*, we reviewed the constitutionality of the "Control of Drug Paraphernalia Act," sections 12–22–501 to 506, 5 C.R.S. (1983 Supp.), which imposes penalties for the possession, manufacture, sale, or delivery of drug paraphernalia. There, we stated that the "level of scrutiny which the court uses in reviewing a vagueness challenge will depend in part on the nature of the enactment." 698 P.2d at 631, citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). We then listed four factors to consider when determining the level of scrutiny to apply when reviewing a statute challenged on vagueness grounds: "The strictness of the vagueness test depends upon whether the enactment: (1) is an economic regulation; (2) imposes civil or criminal penalties; (3) contains a scienter requirement; and (4) threatens to inhibit the exercise of constitutionally protected rights." *High Gear*, 689 P.2d at 631, citing *Flipside*, 455 U.S. at 498, 102 S.Ct. at 1193.

In the instant case, the statutory presumption does not involve civil or criminal penalties and does not threaten to inhibit the exercise of constitutionally protected rights. At most, the presumption may be considered an economic regulation,[4] de-

---

jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

**3.** The court has, however, answered vagueness challenges where the statute in question imposed quasi-criminal sanctions. *See LDS, Inc. v. Healy*, 197 Colo. 19, 589 P.2d 490 (1979); *Weissman v. Board of Educ. of Jefferson County School Dist. No. R–1*, 190 Colo. 414, 547 P.2d 1267 (1976); *Trail Ridge Ford Inc. v. Colorado Dealer Licensing Board*, 190 Colo. 82, 543 P.2d 1245 (1975). Quasi-criminal statutes generally impose money penalties, forfeitures of property,

or punitive disabilities such as the loss of a professional license or public employment. Clark, *Civil and Criminal Penalties and Forfeitures: A Framework for Constitutional Analysis*, 60 *Minn.L.Rev.* 379, 381 (1976).

**4.** The legislative history of the Ski Safety Act indicates that its drafters were motivated, in part, by a strong desire to shelter ski area operators from the rapidly escalating costs of liability insurance. *See infra* note 10.

signed to limit the liability of ski area operators.[5] It is well established that economic regulations are subject to a less exacting vagueness standard than penal statutes or laws regulating first amendment rights. *Flipside*, 455 U.S. at 498, 102 S.Ct. 1193, citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). Nor does the absence of a scienter requirement here raise the level of scrutiny. In short, we are dealing with a civil statute which regulates constitutionally unprotected conduct and which has no effect on speech or expression.

The guidelines adopted in *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975), are also helpful in evaluating appellant's vagueness challenges. In *Blue*, the defendants contended that a criminal statute was void for vagueness because its crucial terms were so vague that a person of ordinary intelligence would have to speculate as to their meaning. In rejecting defendants' challenge, the court stated that there are limits to the degree of exactitude required of any statute:

> [F]ew words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded.

*Blue*, 190 Colo. at 99, 544 P.2d at 388, quoting *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952); *see also People v. Cardwell*, 181 Colo. 421, 510 P.2d 317 (1973). Moreover, we have never mandated that every word or phrase be specifically defined. To the contrary, we have stated that "the legislature is not constitutionally required to specifically define the readily comprehensible and every-day terms it uses in statutes." *Blue*, 190 Colo. at 101, 544 P.2d at 389, citing *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The words challenged in this case involve such readily comprehensible terms.

■ We turn now to the specific challenges raised by the appellant. First, he asserts that the word "responsibility" is unconstitutionally vague. While the word does not fit nicely into the phraseology used in negligence cases, it is nevertheless common and readily understood. The probable legislative intent in using such a word may be determined by resorting to a standard dictionary. *Blue*, 190 Colo. at 100, 544 P.2d at 388. *Webster's Third New International Dictionary* 1935 (1961) defines "responsibility" as "moral, legal, or mental accountability." Further, *Black's Law Dictionary* 1476 (4th ed. 1951) defines the root term "responsible" as "liable, legally accountable or answerable." Some courts, moreover, have stated that the term "responsibility" is synonymous with "liability." *See, e.g., Rochester Machine Corp. v. Mulach Steel Corp.*, 449 A.2d 1366, 1369, 498 Pa. 545 (1982); *Thorgaard Plumbing & Heating Co. v. County of King*, 426 P.2d 828, 835 (Wash.1967). More specifically, we think that the term "responsibility" as used in section 33–44–109(2) encompasses the legal concept of "fault." Legal scholars have long recognized that the concept of liability is closely related to that of fault.[6] In effect, the statute creates a rebuttable presumption that the skier is at fault whenever he collides with an object listed in section 33–44–109(2). And "fault" may be defined as the equivalent of negligence. *Continental Insurance Co. v. Sabine Towing Co.*, 117 F.2d 694, 697 (5th Cir.), *cert. denied*, 313 U.S. 588, 61 S.Ct. 1111, 85 L.Ed. 1543.[7]

---

5. Section 33–44–103(7), 14 C.R.S. (1984), provides: "'Ski area operator' means 'operator' as defined in section 25–5–702(3), C.R.S., and any person, partnership, corporation, or other commercial entity having operational responsibility for any ski areas, including an agency of this state or a political subdivision thereof."

6. *See generally* Isaacs, *Fault and Liability*, 31 Harv.L.Rev. 954 (1918).

7. *See also Garcia v. Rosewell*, 43 Ill.App.3d 512, 357 N.E.2d 559, 562, 2 Ill.Dec. 392, 395 (1976) ("fault" is susceptible to various interpretations; it may be defined as the equivalent of negli-

Given this connection between "responsibility" and "negligence," we conclude that the legislature intended, in the context of a skiing accident case, that the term "responsibility" be equated with the concept of "negligence" for purposes of applying the presumption contained within section 33–44–109(2).

■ The phrase "natural object" is also not unconstitutionally vague. Section 33–44–109(2) uses three general categories of objects to include every type of object with which a skier could collide. The same section creates a presumption whereby the skier is presumed responsible/negligent for any collision in which the skier collides with any "person, natural object, or man-made structure marked in accordance with section 33–44–107(7)." [8] Here, it is uncontested that Pizza's injuries occurred upon colliding with the slope after he became airborne. Because the mountain must be classified as a "natural object," the presumption of negligence arose. [9]

Appellant's final vagueness challenge involves the phrase "unless shown to the contrary by a preponderance of the evidence." This phrase allows a skier involved in a collision to rebut the presumption of responsibility/negligence. The problem, again, is to reconcile this rebuttable presumption with established principles governing negligence and comparative negligence. There are two plausible ways in which to interpret this language: first,

that the skier must prove he was not "solely responsible" by proving he was not at all responsible; or, second, that the plaintiff must prove he was not "solely responsible" by presenting evidence of the operator's negligence which outweighs the presumption of the skier being solely negligent.

■ We reject the first alternative. There is simply no indication in the statute when read as a whole, or in the legislative history of the Ski Safety Act of 1979, [10] which allows us to construe the presumption as requiring the skier to show anything more than evidence of the operator's negligence as outweighing the presumption that the skier was solely responsible. Rather, we construe the presumption as consistently as possible with common law principles of negligence. We therefore hold that, while the evidentiary presumption is not unconstitutionally vague, the skier has the burden of rebutting the presumption by presenting evidence of the ski area operator's negligence which outweighs the presumption of the skier's sole negligence.

In the ordinary negligence case, the burden is already on the plaintiff to prove by a preponderance of the evidence that the defendant is negligent and that such negligence caused the plaintiff's injury. *See City of Grand Junction v. Lashmett*, 126 Colo. 256, 247 P.2d 909 (1952). Accordingly, a plaintiff in a ski accident case already bears the burden of proving negligence and

---

gence); *Bixenman v. Hall*, 251 Ind. 527, 242 N.E.2d 837, 839 (1968) (the factor of "fault"— lack of reasonable care—is the factor upon which the presence or absence of negligence depends).

8. Section 33–44–107(7), 14 C.R.S. (1984), provides:

The ski area operator shall mark hydrants, water pipes, and all other man-made structures on slopes and trails which are not readily visible to skiers under conditions of ordinary visibility from a distance of at least one hundred feet and shall cover such obstructions with a shock-absorbent material that will lessen injuries. Any type of marker shall be sufficient, including but not limited to wooden poles, flags, or signs, if the marker is visible from a distance of one hundred feet

and if the marker itself does not constitute a serious hazard to skiers.

9. We also disagree with appellant's assertion that the phrase "natural object" arguably includes man-made structures not marked in accord with section 33–44–107(7). In a case where a skier collides with an unmarked man-made structure which is not plainly visible from a distance of 100 feet, the presumption of the skier being solely responsible does not arise.

10. *See* Hearings on S.B. 203 before the Senate Judiciary Committee, 52d General Assembly, First Session, Jan. 17 & 22, 1979; hearing on S.B. 203 before the House Business Affairs and Labor Committee, 52d General Assembly, First Session, March 13, 1979. Tape recordings of these hearings are maintained at the State Archives.

causation by a preponderance of the evidence. It follows, therefore, that the presumption is rebutted whenever a plaintiff establishes by a preponderance of the evidence that the defendant's negligence caused the collision in which the plaintiff was injured. We must conclude that if the legislature intended anything greater than such a showing by the plaintiff, it would have specifically so provided.

Our construction of the statute, however, is not without practical effect. The ski area operators will benefit when this construction is manifested in the jury instructions. First, our construction entitles the ski area operator to an instruction containing the statutory presumption itself; i.e., that the skier is presumed negligent and that the presumption must be overcome by the skier by a preponderance of the evidence. Colorado Jury Instruction-Civ.2d 3:5 provides the proper framework for such an instruction. Second, the presumption eliminates the need for an instruction patterned after C.J.I.-Civ.2d 9:12 which states: "The occurrence of an accident does not raise any presumption of negligence on the part of either the plaintiff or the defendant." *See Kitto v. Gilbert,* 39 Colo.App. 374, 570 P.2d 544 (1977). Such an instruction would contravene the language of section 33–44–109(2) and would directly conflict with the instruction containing the presumption.

Our analysis gives effect to the legislative recognition of dangers inherent in the sport while still allowing the injured skier an opportunity to prove his case. In effect, the presumption and appropriate instructions create an additional obstacle for the plaintiff in that they permit the jury to find that the plaintiff did not successfully rebut the presumption.

### B. *Rational Evidentiary Basis*

The appellant next contends that section 33–44–109(2) violates due process because there is no natural and rational relationship between the fact to be proved and the fact to be presumed.

A presumption is valid if there is a "natural and rational evidentiary relation between the facts proved and those presumed." *Bishop v. Salida Hospital District,* 158 Colo. 315, 318, 406 P.2d 329, 330 (1965). However, if there is no rational connection between what is proved and what is to be inferred, the statute creating the presumption violates the due process clause. *Western & Atlantic Railroad v. Henderson,* 279 U.S. 639, 642, 49 S.Ct. 445, 447, 73 L.Ed. 884 (1929). The fact to be proved in the present case is collision. Proof of this fact gives rise to the presumption that the skier was solely responsible.

The rational basis for the presumption becomes clear upon reading the statute as a whole. Realizing that there are risks and dangers which will always inhere in the sport, the legislature has attempted to identify those dangers which can reasonably be eliminated or controlled by the ski area operator. Sections 33–44–106 to 108 set forth these duties. Moreover, section 33–44–104(2) makes it negligence *per se* for an operator to violate one of these duties.[11] However, where a skier's injury is unrelated to an operator's breach of a specific duty, as in this case where the injury involved a variation in terrain, the legislature has chosen to create a rebuttable presumption that the skier is solely responsible for the collision. Given that the legislature has imposed duties on the operator, that the skier is under a duty to maintain con-

---

**11.** Section 33–44–104, 14 C.R.S. (1984), provides in pertinent part:

(1) A violation of any requirement of this article shall, to the extent such violation causes injury to any person or damage to property, constitute negligence on the part of the person violating such requirement.

(2) A violation by a ski area operator of any requirement of this article or any rule or regulation promulgated by the passenger tramway safety board pursuant to section 25–5–710(1)(a), C.R.S., shall, to the extent such violation causes injury to any person or damage to property, constitute negligence on the part of such operator.

trol and keep a proper lookout,[12] and, most important, that the sport is inherently risky, we conclude that there is a rational and natural relation here between the fact proved and the fact presumed.

Accordingly, we hold that the evidentiary presumption contained in section 33–44–109(2) is not unconstitutional for want of a rational evidentiary basis.

## C. *Equal Protection*

The appellant also claims that section 33–44–109(2) violates the equal protection clause of the fourteenth amendment. He argues that, by creating a presumption that the skier is responsible for a collision on the slopes, skiers have been arbitrarily and unreasonably treated differently from other individuals such as swimmers, golfers, or skaters.

■ The presumption involves neither a suspect class nor a fundamental right. Skiers as a group do not constitute a suspect class, and being free from a legislatively imposed rebuttable presumption of negligence is not a fundamental right. Therefore, the appropriate standard of review is whether the legislation has some rational basis in fact and bears a rational relationship to legitimate state objectives. *Smith v. Charnes*, 649 P.2d 1089 (Colo. 1982); *Hurricane v. Kanover, Ltd.*, 651 P.2d 1218 (Colo.1982).

Classes can be treated differently provided the unequal treatment is based on reasonable differences. *Bushnell v. Sapp*, 194 Colo. 273, 280, 571 P.2d 1100, 1105 (1977). In order to invalidate such a classification, there must be no set of facts which can reasonably justify it. *Id.; Johnson v. Division of Employment*, 191 Colo. 38, 550 P.2d 334 (1976).

■ Here, there are valid reasons justifying the classification. Indisputably, the ski industry is an important part of the Colorado economy. *See* Brown, Bortz & Coddington, *The Contribution of Skiing to*

*the Colorado Economy* (1982); Chalat, *Continuing Changes in Colorado Ski Law*, 13 Colo.Law. 407, 409–10 (1984). The legislative history indicates that one of the purposes underlying the presumption is to reduce the number of frivolous lawsuits and, accordingly, the rapidly rising cost of liability insurance accruing to ski area operators.[13] The presumption contained in section 33–44–109(2) is apparently one way in which the legislature chose to attain this end. In creating the presumption, the legislature necessarily singled out skiers by imposing on them an evidentiary obstacle different from other sports participants. In short, the legislature rationally decided to provide additional protection to ski area operators by creating the evidentiary presumption. We therefore hold that the presumption contained in section 33–44–109(2) has a rational basis in fact and is rationally related to the legitimate state interest of preserving an important area of the state's economy.

In summary, section 33–44–109(2) of the Colorado Ski Safety Act of 1979 does not violate the fourteenth amendment of the United States Constitution.

## III.

Appellant next asserts that the trial court erred by giving certain jury instructions and not others. He first maintains that it was error for the trial court judge to give Instruction No. 19 which is patterned after CJI–Civ.2d 9:14, the "negligence *per se*—violation of statute or ordinance" instruction, and which, accordingly, incorporated sections 33–44–104(1) and 33–44–109(1) and (2), 14 C.R.S. (1984). The instruction charged:

At the time of the occurrence in question in this case, the following statutes of the State of Colorado were in full force and effect:

A violation of any requirement of this article shall, to the extent such violation causes injury to any person or

---

**12.** Section 33–44–109(2).

**13.** Hearing on S.B. 203 before the Senate Judiciary Committee, 52d General Assembly, First Session, Jan. 17, 1979.

**680**

damage to property, constitute [sic] negligence on the part of the person violating such requirement.

\* \* \* \* \* \*

Each skier solely has the responsibility for knowing the range of his own ability to negotiate any ski slope or trail and ski within the limits of such ability.

Each skier has the duty to maintain control of his speed and course at all times when skiing and to maintain a proper lookout so as to be able to avoid other skiers and objects. However, the primary duty shall be on the person skiing downhill to avoid collision with any person or objects below him. It is presumed unless shown to the contrary by a preponderance of the evidence, that the responsibility for collisions by skiers with any person, natural object, or man-made structure ... is solely that of the skier or skiers involved and not that of the ski area operator.

A violation of the above statutes constitutes negligence, as negligence is elsewhere defined in these instructions.

If you find such a violation, you may only consider it if you also find that it was a cause of the claimed injuries and damages.

■ Appellant primarily contends that it was error to include in this instruction the presumption language from section 33–44–109(2) because a presumption is not a duty. He argues that this instruction, in effect, tells the jury that it is negligence to violate a presumption. We agree with appellant that it was improper to include in a negligence *per se* instruction the rebuttable presumption of negligence. The instruction wrongly commingles the statutory duties of a skier, the breach of which constitutes negligence, with the statutory rebuttable presumption of section 33–44–

109(2) and thereby suggests that the presumption is conclusive rather than rebuttable.

■ We also agree with the appellant that the presumption in No. 19 should not have been given because it was already contained in Instruction No. 4, patterned after CJI–Civ.2d 3:5, which charged:

"Presumptions" are rules based upon experience or public policy and established in the law to assist the jury in ascertaining the truth.

In this case the law presumes that the plaintiff, Bhrett Pizza, was negligent at the time of his accident [on] December 5, 1980.

Unless and until the presumption is outweighed by evidence to the contrary which has been proved by a preponderance of the evidence, you must consider the presumption with the other evidence in arriving at your verdict.

Hence, the latter part of the statute quoted in Instruction No. 19 essentially repeated what was already charged in Instruction No. 4. We have held in the past that it is error to give two instructions, virtually the same, which would tend to confuse the jury by overly emphasizing a defense. *Norden v. Henry*, 167 Colo. 274, 279, 447 P.2d 212, 214 (1968). Here, not only is Instruction No. 19 confusing in itself, but it is also unduly repetitious in light of Instruction No. 4. We therefore hold that it was error to include the presumption language in Instruction No. 19.[14]

■ Appellant next argues that it was error to give the jury Instruction No. 18, which was patterned after CJI–Civ.2d 9:13. The instruction stated:

To look in such a manner as to fail to see what must have been plainly visible is to look without a reasonable degree of care

---

**14.** Appellant argues for the first time on appeal that Instruction No. 17 conflicts with Instruction Nos. 4 and 19. Instruction No. 17 was patterned after CJI–Civ.2d 9:12 (happening of accident not presumptive of negligence). We refuse to address appellant's argument for the first time on appeal. C.R.C.P. 59(f) required that, before an issue of law or fact can be considered on review, the appellant must raise the issue in his motion for new trial. C.R.C.P. 59 was repealed and reenacted effective January 1, 1985.

and is of no more effect than not to have looked at all.

Appellant first maintains that this instruction is "virtually identical" to the part of Instruction No. 19 which charged: "Each skier has the duty to maintain control of his speed and course at all times when skiing and to maintain a proper lookout so as to be able to avoid other skiers and objects." This language is taken directly from section 33–44–109(2), but it is also similar to CJI–Civ.2d 11:1, which states: "A driver must maintain a proper lookout to see what he could and should have seen in the exercise of reasonable care." The "notes on use" to CJI–Civ.2d 11:1 state that the giving of an instruction patterned after CJI–Civ.2d 11:1 does not preclude the issuance of an instruction based on CJI–Civ.2d 9:13 (Instruction No. 18). More important, Instruction No. 19 states that a skier has a duty to maintain control and a proper lookout, while Instruction No. 18 defines, in appropriate factual situations, what a proper lookout should be and the effect of failing to maintain such a lookout. *Horton v. Mondragon*, 705 P.2d 977 (Colo. App.1984). The instructions are not "essentially identical." *Cf. Norden v. Henry*, 167 Colo. 274, 447 P.2d 212 (1968). Accordingly, we hold that Instruction No. 18 did not unduly duplicate part of Instruction No. 19.

Appellant also argues that the giving of Instruction No. 18 was not warranted because the evidence does not show that the terrain at the lower headwall was "plainly visible." While we believe the record indicates that the terrain was "plainly visible," we nevertheless hold that the instruction should not have been given.

 The "look but not see" instruction should be given when the alleged negligence or contributory negligence involved "the failure to see something which was plainly visible, and the allegedly negligent actor claimed he did not see it." *Horton v. Mondragon*, 705 P.2d 977 (Colo.App.1984); *Zavorka v. Union Pacific Railroad Co.*, 690 P.2d 1285, 1289 (Colo.App.1984). Here, while the testimony clearly established that

visibility on Thumper at the time of the accident was adequate, the record does not indicate that Pizza ever claimed he did not see the terrain near the lower headwall. In fact, he testified to the contrary. When asked by defense counsel if he could see "a bump or something" as he was going down Thumper, Pizza testified: "Well, if it was there, I could see it.... It wasn't any different from the rest of the terrain I had just been on." He also testified: "I could always see that the terrain was going to change;" and "I could see in front of me as I was skiing, what I needed to see." Moreover, the record shows that Pizza had skied Thumper approximately forty times in seasons prior to December 1980.

We initially note that in analyzing the propriety of issuing a "look but not see" instruction in a ski case, this court derives some guidance from two cases decided by the Tenth Circuit Court of Appeals. In *Ninio v. Hight*, 385 F.2d 350 (10th Cir. 1967), the court held that it was proper to issue the instruction in a ski accident case where the evidence showed that the defendant failed to see the group of persons with whom he collided. In *Rimkus v. Northwest Colorado Ski Corp.*, 706 F.2d 1060 (10th Cir.1983), the court held that it would be error to give the instruction where there is "a genuine dispute about whether the condition could have been seen by a reasonable man." *Id.* at 1067.

The facts of this case, however, are fundamentally different from both *Ninio* and *Rimkus*. In *Ninio*, the party charged with the duty to look and see (Hight) collided with members of a ski class. In *Rimkus*, the party under the duty to look and see (Rimkus) injured himself as a result of skiing over an exposed rock outcropping. In both cases the duty-bound skier collided with objects which a reasonable person would have attempted to avoid had he seen the object or person in time. Here, however, the lower headwall was not of such a nature that a reasonable skier would have attempted to avoid it. The testimony regarding the nature of the headwall indicated that it may have been dangerous not

because the appellant looked but failed to see it, but because of its unusual contour.

Michael Sanderson, a ski patrolman on duty at the time of the accident, testified that he had been skiing Wolf Creek for about 20 years. He stated that at times while skiing the lower headwall on Thumper he had traveled 20–30 feet through the air without intending to do so. He further testified that the lower headwall has a "terrible approach ... a terrible landing," and "everything is wrong about it." In addition to Sanderson, other witnesses also testified regarding the unusual shape of the lower headwall and its tendency to cause skiers to become unexpectedly airborne. While the slope and its contour may have been plainly visible, its condition became known upon skiing it, not seeing it.

▆▆▆ Instruction No. 18 should not have been given because the dangerous nature of the thing to be avoided was not obvious and Pizza never stated that he did not see it. Hence, this case is distinguishable from *Ninio* and *Rimkus* as well as the automobile cases addressing the "look but not see" instruction. *See, e.g., Union Pacific Railroad Co. v. Cogburn*, 136 Colo. 184, 315 P.2d 209 (1957) (the plaintiff drove his car at a high rate of speed into a boxcar which was stopped on railroad tracks crossing the highway); *Clark v. Bunnell*, 172 Colo. 32, 470 P.2d 42 (1970) (the plaintiff's car collided with another car in a shopping center parking lot); *Horton v. Mondragon*, 705 P.2d 977 (Colo.App.1984) (the "look but not see" instruction should be given where a 23-month-old girl, dressed in red, sitting on sidewalk, is run over by car pulling into driveway). In all of these cases, the party under the duty to look and see collided with something which would have been avoided had it been seen in time. In the instant case, the risk of encountering the lower headwall was not obvious or apparent, and the evidence did not indicate that Pizza should have avoided it. For these reasons, we hold that it was error to issue the look but not see instruction.

Appellant next argues that the trial court should have omitted certain language from Instruction No. 22, which was patterned after CJI–Civ.2d 12:4 (1980) (duty of occupant or owner of premises).[15] Paragraph three of Instruction No. 22 advised the jury that in determining whether Wolf Creek acted reasonably it should consider: "Whether there was a condition on the premises which created an unreasonable risk of injury to persons such as the plaintiff *and which they could not reasonably be expected to discover for themselves.*" (emphasis added). Appellant argues, without citing supporting authority, that this instruction improperly commingles the duty of the ski area operator with the defense of contributory negligence. He also contends that the trial court erred by failing to give his Instruction No. 3, which allegedly contained his theory of the case. The tendered instruction stated:

15. Instruction No. 22 charged in full:
The occupant of premises has a duty to use reasonable care to maintain his premises in a reasonably safe condition in view of the foreseeability, if any, of injury to others.
In determining whether or not the defendant, Wolf Creek Skiing Corporation, as an occupant of premises acted as a reasonably careful person in maintaining the premises in a reasonably safe condition, considering the foreseeability, if any, of injury to others, you should consider, but are not limited to, the following:
1. The purpose for which the plaintiff, Bhrett Pizza, was on the premises;
2. Whether the defendant reasonably could have foreseen that persons such as the plaintiff would or might come upon the premises for the same or similar purpose;

3. Whether there was a condition on the premises which created an unreasonable risk of injury to persons such as the plaintiff *and which they could not reasonably be expected to discover for themselves;*
4. If there was such a condition, did defendant know or reasonably should he have known of its existence;
5. If there was such a condition which the defendant knew or reasonably should have known of, did the defendant use reasonable care to correct or give warning of it? (emphasis added)
Since the time of trial, CJI–Civ.2d 12:4 (1980), has been replaced by CJI–Civ.2d 12:4, 12:5, and 12:5A (1985 Supp.). The new instructions do not contain the language which appellant finds objectionable in paragraph 3 of CJI–Civ.2d 12:4 (1980).

The defendant has a duty to remove or correct a condition on its ski slopes which creates an unreasonable risk of harm to skiers, or the defendant must mark or otherwise warn skiers of conditions which constitute a hidden danger to the skier.

Instruction No. 22 was patterned after CJI–Civ.2d 12:4 (1980). Because CJI–Civ.2d 12:4 (1980) has been replaced by CJI–Civ.2d 12:4, 12:5, and 12:5A (1985 Supp.) since the trial of this case, and appellant's theory of the case may not be the same on retrial, we do not deem it necessary to resolve these claims.

Appellant contends the trial court erred in refusing to give his tendered jury instruction which would have advised the jury that the operator owed the highest degree of care because it was engaged in an "inherently dangerous activity." Instead of giving this instruction, the trial court judge instructed the jury that the operator owed Pizza a duty of reasonable care. We affirm the decision of the trial court.

■ The appellant argues that operating a ski area is analogous to selling explosive gases, supplying electricity, and operating an amusement park, all of which have been found by this court to constitute inherently dangerous activities. *See Blue Flame Gas, Inc. v. Van Hoose,* 679 P.2d 579 (Colo.1984) (propane gas); *Federal Insurance Co. v. Public Service Co.,* 194 Colo. 107, 570 P.2d 239 (1977) (electricity); *Hook v. Lakeside Park Co.,* 142 Colo. 277, 351 P.2d 261 (1960) (amusement device). We disagree.

In *Federal Insurance Co.,* we addressed the degree of care owed by an electric utility in supplying electricity. There we relied on three factors in holding that the utility owed the highest degree of care.

Compelling reasons continue to exist to warrant the requirement that electric utilities conduct their business with the "highest degree of care": (1) electrical energy possesses inherently dangerous properties, (2) electric utilities possess expertise in dealing with electrical phenomena and in operating facilities for delivery of electricity, and (3) the general public is not able to recognize and guard against the dangerous potential of certain situations. Electricity has been described as a silent, deadly, and instantaneous force, and its distribution has been compared to operating a firing range or handling explosives in *Spence v. Commonwealth Edison Co.,* 34 Ill.App.3d 1059, 340 N.E.2d 550 (1975).

194 Colo. at 112, 570 P.2d at 242. While we agree that there are certain risks inherent in the sport of skiing, *see* section 33–44–102, and ski area operators possess expertise in operating ski areas, we do not think the risks associated with skiing rise to the level of those associated with supplying electricity, operating amusement devices, and selling propane gas. Moreover, the third prong of *Federal Insurance Co.* does not apply. A skier can ordinarily guard against potentially dangerous variations in terrain. In fact, the legislature recognized this ability and accordingly imposed a duty on the skier "to maintain control of ... speed and course at all times when skiing and to maintain a proper lookout so as to be able to avoid other skiers and objects." Section 33–44–109(2).

We also find convincing the reasoning of *Mannhard v. Clear Creek Skiing Corp.,* 682 P.2d 64 (Colo.App.1983) *cert. denied* (1984). In *Mannhard* a skier was killed in an avalanche caused by him and two companions while skiing in an out-of-bounds area at Loveland Basin Ski Area. The decedent's wife brought a wrongful death action alleging that the operator's negligence caused the death of her husband. The jury returned a verdict for the defendant. On appeal, the plaintiff argued that it was error for the trial court to refuse to instruct the jury that the operator owed the highest degree of care because it was engaged in an inherently dangerous activity. *Id.* at 65. The court of appeals disagreed and held that the duty of the operator is one of "reasonable care." *Id.* It applied the three-part test of *Federal Insurance Co.* and reasoned that the first part of the

test was not satisfied because " 'inherently dangerous activity' implies some sort of action or affirmative act which would *create* a dangerous situation for others....." *Mannhard,* 682 P.2d at 66 (emphasis in original). We do not believe that the operation of a ski area or, as here, the construction or maintenance of a service road, constitutes the type of affirmative act which is necessary to create an inherently dangerous activity. Rather, the variation in the terrain constituted a passive condition which had existed for many years. We are unwilling to extend the doctrine of "inherently dangerous activity" to the operation of a ski area or to the type of passive condition found in this case.

Accordingly, we hold that there was no basis to support an "inherently dangerous activity" instruction. Where the injury is related to a variation in the slope's terrain, the trial court was correct in instructing the jury that the ski area operator only owes a duty of reasonable care to the skier.

## IV.

Appellant finally contends that the trial court erred in refusing to instruct the jury on exemplary damages. He attempts to support this contention by arguing that: Thumper should not have been open on December 5 due to inadequate snowfall and the defendant knew this; the defendant had knowledge of previous injuries occurring at the lower headwall on Thumper; and the defendant knew or should have known that Pizza's injury would probably result from the condition of Thumper at the lower headwall.

In rejecting the tendered jury instruction, the trial court ruled that the Ski Safety Act of 1979 precluded exemplary damages and, alternatively, that the evidence did not support the instruction. We disagree that the Act precludes exemplary damages, but we agree that the evidence did not warrant the instruction.

■ In Colorado, exemplary damages are a creature of statute. *Mince v. Butters,* 200 Colo. 501, 503, 616 P.2d 127, 128

(1980). Section 13–21–102, 6 C.R.S. (1973), provides in pertinent part:

> In all civil actions in which damages are assessed by a jury for a wrong done to the person ... and the injury complained of is attended by circumstances of ... a wanton and reckless disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

The Ski Safety Act of 1979 manifests no legislative intent to abolish the applicability of section 13–21–102 in civil actions arising out of skiing injuries. We accordingly refuse to abolish this statutory right.

We are convinced, however, that the trial court correctly ruled that the evidence was insufficient to justify an instruction on exemplary damages. In order to recover exemplary damages, the plaintiff must show, beyond a reasonable doubt, that the act causing the injury was done "with an evil intent and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of his rights as evidence a wrongful motive." *Frick v. Abell,* 198 Colo. 508, 510, 602 P.2d 852, 854 (1979), quoting *Ress v. Rediess,* 130 Colo. 572, 579, 278 P.2d 183, 187 (1954). It has also been often stated that before a plaintiff may recover exemplary damages he must show that the defendant "while conscious of his conduct and cognizant of existing conditions, knew or should have known, that the injury would probably result from his acts." *Frick,* 198 Colo. at 511, 602 P.2d at 854, citing *Foster v. Redding,* 97 Colo. 4, 45 P.2d 940 (1935); *Clark v. Small,* 80 Colo. 227, 250 P. 385 (1926). The question of whether the evidence is sufficient to support an award of exemplary damages is one of law; whether such damages are ultimately awarded is one for the trier of fact. *Mince v. Butters,* 200 Colo. 501, 504–05, 616 P.2d 127, 129.

■ We therefore must decide whether there was sufficient evidence, when viewed in its totality, indicating that Wolf Creek knew, or should have known, that Pizza's injury would probably result from the con-

dition of Thumper at the lower headwall. Both the ski area manager and a ski instructor at Wolf Creek testified that the snow on Thumper was adequate. Conversely, there was no evidence presented by Pizza which convincingly showed that Wolf Creek employees knew, or should have known, that the snowfall on Thumper was inadequate. Nor was there evidence presented that Wolf Creek employees knew that a serious injury would result from the condition at the lower headwall. The area manager testified that the lower headwall was not a particularly hazardous area. And, while the manager was aware of prior injuries occurring in the vicinity of the lower headwall on Thumper, he testified that the injuries were "very minor" and not related to becoming airborne. We conclude that the record supports the trial court's finding that the evidence was insufficient to support an instruction on exemplary damages. The totality of the evidence simply does not indicate that Wolf Creek knew, or should have known, that a serious injury would probably occur due to the condition of Thumper at the lower headwall.

The judgment of the trial court is reversed, and the case is remanded for a new trial consistent with the views expressed in this opinion.