REGENTS OF the UNIVERSITY OF COLORADO on Behalf of the UNIVERSITY OF COLORADO AT BOULDER, and Buffalo Power Corporation, a Colorado not-for-profit corporation, Plaintiffs–Appellants,

v.

HARBERT CONSTRUCTION COMPANY, a division of Harbert International, Inc., a Delaware corporation; and U.S. Turbine Corporation, an Ohio corporation, Defendants–Appellees.

No. 00CA1276.

Colorado Court of Appeals, Div. III.

Nov. 8, 2001.

Rehearing Denied Dec. 20, 2001.

Certiorari Denied July 22, 2002.

Grund & Breslau, P.C., Brad W. Breslau, Della S. Nelson, Denver, CO; Sutton & Melonakis, P.A., Anthony Melonakis, Littleton, CO, for Plaintiffs–Appellants.

Brownstein Hyatt & Farber, P.C., Hubert Farbes, Jr., Mark T. Barnes, Denver, CO, for Defendant–Appellee Harbert Construction Company.

Burg Simpson Eldredge Hersh & Houliston, P.C., Scott J. Eldredge, Englewood, CO, for Defendant–Appellee U.S. Turbine Corporation.

Opinion by Judge STERNBERG.*

This case arises from an explosion and fire at a cogeneration power facility. Plaintiffs, the Regents of the University of Colorado and Buffalo Power Corporation, challenge the summary judgment entered in favor of defendant, Harbert Construction Company, the contractor that built the facility. Plaintiffs also appeal from the judgment entered on a jury verdict in favor of defendant, U.S. Turbine Corporation, a subcontractor for the

\* Sitting by assignment of the Chief Justice under the provisions of Colo. Const. art. VI, § 5(3),

project. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiffs hired the contractor to build a cogeneration facility on the University of Colorado's Boulder campus. The subcontractor was hired to provide the gas turbine engines for the project, as well as technical assistance when the turbines were installed. The subcontractor also trained the facility's staff in the maintenance and operation of the turbines.

Plaintiffs' contract with the contractor included a warranty for the contractor's work on the facility. Plaintiffs also purchased from the subcontractor a five-year "System Maintenance and Extended Warranty Agreement" for the turbines.

The explosion and fire occurred when a 500–gallon waste fuel tank in the facility's basement overfilled, causing fuel oil to back up into one of the turbines. Although no one was hurt in the incident, the facility sustained extensive damage.

Four factors contributed to the explosion. First, each turbine was connected to the inlet plenum drain, which permitted cleaning solution to be drained from the turbines after a crank soak wash, i.e., a wash in which the turbines were shut off. The design drawing prepared by the contractor's engineer called for the drain to empty into an open trench in the ground. The workers who built the facility connected the drain to the waste fuel tank. This alteration troubled the subcontractor's on-site representative, but he did not share his concerns with anyone.

Second, the inlet plenum drain included a hand valve that was to remain closed except when the subcontractor inspected the system or the facility staff drained the turbines after a crank soak wash. The valve was open when the accident occurred. Had it been closed, it would have prevented the fuel oil in the waste fuel tank from backing up into the turbine. The record is conflicting as to whether the subcontractor or a facility staff member left the valve open.

and § 24–51–1105, C.R.S.2001.

Third, the contractor installed a vent stack on the waste fuel tank that should have provided an escape for any excess fuel oil. The fuel oil could not drain from the vent stack, however, because the stack was elevated above the waste tank to a point that was higher than the base of the inlet plenum drain. As a result, when the waste tank overfilled, the fuel oil backed up into the turbines before it could reach the end of the vent stack. The record is conflicting as to whether the contractor installed a vent stack that was too high or whether the facility staff improperly lengthened it after installation.

And fourth, the facility staff ignored a system alarm and allowed the waste tank to overfill. The alarm, which was triggered when the waste tank became two-thirds full, went off twice in the three weeks before the explosion. The staff had no sense of urgency about the alarm because the waste tank had filled to capacity only twice in the three and a half years of the facility's operation. The tank filled exceptionally quickly in this instance, however, due to a valve defect that allowed steam condensate to leak into the inlet plenum drain. A sight gauge on the tank allowed the staff to visually monitor the fluid level inside.

Plaintiffs sued the contractor for negligence, breach of contract, breach of express and implied warranties, strict liability, and indemnification. The trial court granted the contractor's motion for summary judgment on plaintiffs' claims of negligence, breach of contract, strict liability, and indemnification, based on its conclusion that the parties' contract precluded recovery for these claims. The court granted summary judgment for the contractor on the warranty claims because the contractor's warranty had expired when the accident occurred. The trial court denied plaintiffs' subsequent motion for reconsideration and awarded the contractor $76,236 in costs.

Plaintiffs sued the subcontractor for negligence and breach of contract. Those claims were tried to a jury, which returned a verdict in the subcontractor's favor.

## I.

Plaintiffs contend that the trial court erred in entering summary judgment for the contractor on plaintiffs' claims for negligence, breach of contract, strict liability, and breach of express warranty. According to them, the court erred in concluding that the parties' contract precluded recovery for those claims. We disagree.

Our review of a grant of summary judgment in matters involving contract interpretation is *de novo*. The nonmoving party is entitled to the benefit of all favorable inferences that reasonably may be drawn from the undisputed facts, and all doubts must be resolved against the moving party. Our goal in interpreting the contract is to give effect to the parties' intent expressed in the contract language. *Vu, Inc. v. Pac. Ocean Marketplace*, 36 P.3d 165 (Colo.App.2001).

### A.

The trial court concluded that § 9.4 of the parties' contract precluded recovery for negligence, breach of contract, and strict liability. Section 9.4 states in relevant part that, subject to certain exceptions (including warranty claims under § 18 of the contract) that do not apply here, "Acceptance of the work ... shall constitute a release of all claims against CONTRACTOR...." The trial court determined that § 9.4 was unambiguous and released the contractor from liability for claims related to negligence, breach of contract, and strict liability. We agree.

Section 9.4 extinguished liability for all claims, subject to exceptions that do not apply to the three claims at issue. Had the parties wished to exclude negligence, breach of contract, and strict liability claims from the scope of the release, they could have easily done so. If a contract clearly expresses the intent of the parties, it must be enforced as written. *See Fox v. I-10, Ltd.*, 957 P.2d 1018 (Colo.1998).

Plaintiffs argue the variances in the inlet plenum drain and the vent stack are latent defects to which § 9.4 does not apply. Plaintiffs rely on five cases in making this argument: *Zambakian v. Leson*, 77 Colo. 183, 234

P. 1065 (1925); *Cohen v. Vivian,* 141 Colo. 443, 349 P.2d 366 (1960); *Barker v. Nichols,* 3 Colo.App. 25, 31 P. 1024 (1892); *Driscoll v. Columbia Realty–Woodland Park Co.,* 41 Colo.App. 453, 590 P.2d 73 (1978); and *City of Granville v. Kovash, Inc.,* 118 N.W.2d 354 (N.D.1962). These cases are distinguishable because they do not concern release provisions like § 9.4. A sixth case, *Summit Construction Co. v. Yeager Garden Acres, Inc.,* 28 Colo.App. 110, 470 P.2d 870 (1970), is distinguishable because there an exception to the release allowed the plaintiff to pursue the claim at issue.

The language of § 9.4 is broad and unambiguous: it precludes plaintiff from recovering for claims of negligence, breach of contract, and strict liability. Thus, the contractor was entitled to summary judgment on those claims.

### B.

■ Although § 9.4 excepts warranty claims from the general liability release, the trial court concluded that plaintiffs' express warranty claim was untimely because the warranty provided in the contract had expired when the accident occurred. Again, we agree with the trial court.

Section 18 of the parties' contract states that the contractor's "WORK will be performed in accordance with Contract Documents and in accordance with generally accepted engineering and construction principles and practices."

Section 18.2 warrants that the contractor's "WORK will be free from defects in design, workmanship, equipment and materials," and that "the CONTRACTOR shall promptly correct any defects, including nonconformance with the Contract Documents," that occur within the warranty period.

Section 18.3 provides: "The warranty period provided in Section 18.2 shall begin on Acceptance or the date that care, custody and control of a portion of the WORK is transferred to the OWNER ... and shall end twelve (12) months later...."

Plaintiffs contend that § 18 provides a separate warranty from that found in § 18.2 and thus is not subject to the twelve-month war-

ranty period in § 18.3. A logical reading of the sections leads to a contrary conclusion. Section 18.2 specifically incorporates § 18 by requiring the contractor to correct defects that relate to "nonconformance with the Contract Documents" if those defects occur within the warranty period.

■ In construing a contract, the meaning and intent of the parties must be determined in light of the contract as a whole. Moreover, the construction of the contract must be consistent with its main purposes. *Johnson Homes, Inc. v. Southwest Metro. Water & Sanitation Dist.,* 725 P.2d 12 (Colo. App.1986). Construed together, the warranty provisions created a twelve-month period, triggered by plaintiffs' acceptance of the facility, during which all warranty claims had to accrue to be actionable. Because there is no dispute that plaintiffs' express warranty claim arose more than twelve months after the facility was accepted, the trial court did not err in granting summary judgment on that claim in the contractor's favor.

We reject plaintiffs' contention that enforcement of the warranty as written deprives them of the substantial value of the contract in violation of the essential purpose doctrine under § 4–2–719(2), C.R.S.2001, of the Colorado Uniform Commercial Code. Even if we accept the premise that the Code applies to the contract here, we do not agree that the remedy available to plaintiffs failed of its essential purpose. The warranty provision did not provide an inadequate remedy to plaintiffs during the warranty period; it merely limited the duration of the contractor's liability. Therefore, § 4–2–719(2) is inapplicable here. *See Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.,* 767 F.Supp. 363 (D.Mass.1991)(collecting cases that hold that U.C.C. § 2–719(2) does not apply to expired warranties).

Because we conclude that the express warranty under the contract had expired when plaintiffs' cause of action accrued, we do not address the parties' arguments as to which statute of limitations applied to plaintiffs' express warranty claim.

## II.

Plaintiffs contend that the trial court erred in awarding the contractor costs in an amount that is unreasonable and not representative of the contractor's actual costs. We agree in part.

■ A trial court has broad discretion in awarding costs, and its decision will not be disturbed on appeal unless it has abused its discretion. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *Nguyen v. Reg'l Transp. Dist.*, 987 P.2d 933 (Colo.App.1999).

### A.

■ Plaintiffs contend that the contractor's costs were not reasonably incurred because it waited one and a half years after the complaint was filed to move for summary judgment. Plaintiffs argue that the contractor took an unreasonably long time to make its motion and thus incurred unreasonable costs. We disagree.

This case involved complicated facts related to technical engineering issues. There were disputed matters regarding the parties' responsibilities and who performed certain work on the facility. The situation here is different from that in *Smith v. Town of Snowmass Village*, 919 P.2d 868 (Colo.App. 1996), the case on which plaintiffs rely. In *Smith*, a slip and fall case that was completely resolved when the lawsuit was dismissed on governmental immunity grounds, the defendant was awarded only those costs necessary to resolve the issue of subject matter jurisdiction. *Smith* was much less complex, both legally and factually, than this case.

Here, in deciding when to file the motion for summary judgment, counsel for the contractor had to balance his client's interest in prevailing at the lowest cost against the necessity of fully understanding the issues raised by plaintiffs' complaint. Under these circumstances the trial court did not err in awarding costs incurred up to the time the contractor moved for summary judgment.

### B.

■ Plaintiffs' next contention is that the bill of costs the contractor submitted must be disallowed because it included items that were based on estimated rather than actual expenses incurred in the litigation. We agree.

The contractor's bill of costs included unitemized charges identified as "general costs." The contractor's attorney informed the trial court that his firm determined general costs by analyzing a representative selection of its cases to determine an average cost for expenses such as in-house copying, postage, local deliveries, and fax and long-distance phone service. Based on this analysis, the firm arrived at a general cost figure that was included as a percentage of the fee charged to the client in lieu of specific costs. The practice was described as "an accounting exercise utilized by the firm ... to minimize the administrative cost associated with keeping track of all those individual items."

■ The record must contain evidence that costs are necessary before those costs may be awarded. *Callaham v. First Am. Title Ins. Co.*, 837 P.2d 769 (Colo.App.1992). The general costs claimed by the contractor, which are not the actual costs incurred, do not comply with this requirement. Therefore, that portion of the trial court's order awarding general costs must be reversed, and the case must be remanded to allow the contractor to submit evidence to support the necessity of the costs at issue.

### III.

■ As to their claims against defendant U.S. Turbine Corporation, plaintiffs contend that the trial court erred in giving the jury a "look but not see" instruction patterned on CJI–Civ. 4th 9:13 (1998). We disagree.

■ A party is entitled to an instruction if it fairly presents the issues and is supported by the evidence. Unless cured by the instructions as a whole, it is reversible error for a trial court to give an erroneous instruction. *Lascano v. Vowell*, 940 P.2d 977 (Colo.App.1996).

The instruction at issue stated: "To look in such a manner as to fail to see what must have been plainly visible is to look without a reasonable degree of care and is of no more effect than not to have looked at all." The trial court gave this instruction, over plaintiffs' objection, in reference to the facility staff's failure to monitor adequately the sight gauge on the waste fuel tank.

The "look but not see" instruction should not be given unless the alleged negligence or contributory negligence involves a failure to see something that was plainly visible, and the allegedly negligent actor claims he or she did not see it. *Pizza v. Wolf Creek Ski Dev. Corp.*, 711 P.2d 671 (Colo. 1985).

Plaintiffs contend that it was error to give the instruction for two reasons. First, the sight gauge was obscured by piping and equipment and was not plainly visible. Second, the evidence at trial indicated that no one from the facility staff even attempted to look at the gauge between the time the alarm was triggered and the time the explosion occurred. The record supports a contrary conclusion.

Regarding the visibility of the gauge, the facility's operations supervisor testified that it was "not hard to see," despite the fact that it was surrounded by pipes and other equipment. The witness further testified that, although it became routine not to check the sight gauge on a regular basis, the facility staff would "absolutely" look at it if the system alarm were triggered.

Thus, there is evidence in the record to support a conclusion that the sight gauge was plainly visible and the facility staff looked at it upon the triggering of the system alarm. Accordingly, the trial court did not err by giving the disputed instruction.

### IV.

Plaintiffs contend that the trial court erred by refusing to give their proposed jury instructions about the meaning of §§ 3(g) and 3(j) of the System Maintenance and Extended Warranty Agreement provided by the subcontractor. We are not persuaded.

A trial judge is required to instruct the jury on the law applicable to the case, and a party is entitled to an instruction on its theory of the case if the evidence supports it. *Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380 (Colo.1998).

Section 3(g) of the agreement obligated the subcontractor to "review, evaluate and recommend specific retrofit and such other programs as identified by [the subcontractor] or others, that would be beneficial to [plaintiffs] in the operation of the System and overall operating economics."

Section 3(j) of the agreement required the subcontractor to "identify, either verbally or in writing, any condition, event or cause of concern as it relates to the safety of the System, personnel and/or operation as identified during the course of preventative maintenance, inspection, emergency service and/or other service being performed."

The agreement defined the "System" as "each gas turbine generator set and components thereof supplied by [the subcontractor] and installed at the Site."

Plaintiffs' proposed instruction stated that, as a matter of law, §§ 3(g) and 3(j) referred to retrofits to equipment and conditions, events or causes of concerns "that exist either inside or outside of the System."

Our reading of §§ 3(g) and 3(j) indicates that neither section unambiguously gave the subcontractor responsibility for any matter outside of the defined system covered by the warranty agreement. Therefore, the trial court did not err by refusing to give plaintiffs' proposed instruction.

The judgment is affirmed in all respects except for the award of general costs to the contractor, which is reversed. The case is remanded to the trial court to allow the contractor to submit evidence to support the necessity of the costs at issue.

Judge JONES and Judge NIETO concur.